371 So.2d 693 (1979)
Myra BILAMS, As Administratrix of the Estate of Leon Bartley, Deceased, for the Benefit of Myra Bilams, Appellant,
v.
METROPOLITAN TRANSIT AUTHORITY, a Political Subdivision of the State of Florida, and Metropolitan Dade County, Appellees.
No. 78-1282.
District Court of Appeal of Florida, Third District.
June 5, 1979.
*694 Wolfson & Diamond and J. William Kirkland, Miami Beach, for appellant.
Wicker, Smith, Blomqvist, Davant, McMath, Tutan & O'Hara and Richard A. Sherman, Miami, for appellees.
Before HENDRY, HUBBART and SCHWARTZ, JJ.
SCHWARTZ, Judge.
In the morning of February 7, 1975, while on his way to school, an 11-year-old boy named Leon Bartley was struck and killed by a Metro bus on West Flagler Street near its intersection with 10th Avenue in Miami. At the conclusion of the plaintiff-appellant's case in the wrongful death action arising out of the accident, the trial judge directed a verdict in favor of the defendant-appellee, Metropolitan Dade County. The plaintiff appeals; we reverse.
Viewed, as required, most favorably to the plaintiff, the record shows that the accident occurred as the bus was traveling in one of three west bound lanes on Flagler Street,[1] at an estimated speed of 25-30 m.p.h. The bus operator stated that, from a distance of no less than two bus lengths or 80 feet away, and with no obstructions to his vision, he saw several children standing on the north sidewalk to the west of the 10th Avenue intersection. Shortly thereafter, as Mr. Gwinn, a driver who was traveling east bound stated, three of those children dashed across the street from north to south. A fourth, the decedent Bartley, then began to run across the street. He crossed all three westbound lanes directly in front of the bus, and got into the northernmost east bound lane in which Mr. Gwinn was riding. Gwinn, who stated he was aware of possible danger to the children almost as soon as he saw them and had begun to slow down at that time, was able to bring his car to a complete stop so as to avoid striking the boy. The sound of Gwinn's brakes, however, apparently startled *695 Leon. He suddenly stopped, turned and began to run back towards the north side of the street. At a point between the middle and curb westbound lanes, he slipped, fell backward and was run over by the bus's right rear wheels. The bus driver testified that he attempted to avoid the accident only by moving his bus to the left when he saw the boy come back across the westbound lanes in which he was traveling. At no time, however, from the point he first saw the children on the north sidewalk until the accident occurred did he apply his brakes or otherwise slow down in any way.
We think it clear that, on this record, a jury question was presented as to the negligence of the defendant's bus driver. It is established in our jurisdiction that, as stated in Miami Paper Co. v. Johnston, 58 So.2d 869, 870-871 (Fla. 1952):
"It is a matter of common knowledge that small children are erratic and unpredictable, that they are liable to take off at any time and in any direction with no concern whatever for their own safety. The drivers of motor vehicles are charged with knowledge of their behavior and are expected to govern themselves accordingly when parking or driving about school grounds, recreation parks, residential communities, trailer parks and other places inhabited by or frequented by children. They are expected to anticipate children about such places and whether or not they exercise reasonable care in doing so is a question for the jury.

The general rule supported by a wealth of authority is that one manipulating a motor vehicle on the highway, whether backing, starting, or proceeding ahead, must exercise reasonable care, circumstances being the guide as to what constitutes reasonable care. If he has reason to think that children may be near, reasonable caution requires that he be on the lookout for them ..." [emphasis supplied]
Accord, e.g., Winner v. Sharp, 43 So.2d 634 (Fla. 1949); Coast Cities Coaches v. Donat, 106 So.2d 593 (Fla. 3d DCA 1958); Budgen v. Brady, 103 So.2d 672 (Fla. 1st DCA 1958), cert. denied, 105 So.2d 793 (Fla. 1958). In this case, the driver not only should have seen but did see children both at the edge of the street, and then actually running across it directly in front of him. Under these circumstances, the jury could properly find that (a) the fact he never applied his brakes so as to stop  as Gwinn was able to do  or reduce his speed; and (b) his failure to take any evasive action other than a mere movement of his bus to the left after the boy appeared, for the second time, immediately in his path, constituted breaches of this duty of reasonable care. Among the many cases which support this conclusion, two are especially similar to this one. In Connell v. Petri, 159 Fla. 67, 30 So.2d 922, 923 (1947), the supreme court held:
"... children were `all up and down the highway.'"
* * * * * *
"This factor alone should have been of sufficient import to place a reasonably prudent driver upon notice to exercise due care in the operation of his vehicle. This condition of fact being true, the speed of the car should have been reduced from that at which it was traveling to meet exigencies that might arise such as the one before us in this case."
Similarly, the court in Signaigo v. Hennings, 249 So.2d 60, 61 (Fla. 1st DCA 1971), held:
"... it appears that the appellant while driving his motor vehicle along State Highway # 298, meeting a greyhound bus, ran over the deceased child. It appears that about 600 feet separated the appellant's car and the greyhound bus, the appellant observed some children playing near the road and that said children ran across the road either before or just after the greyhound bus had passed and that the conduct of the children were so noticeable that the appellant remarked to his minor son who was a passenger in his car that `them kids had better move there or they will get run over'. The appellant testified that after he saw the children, he let his foot off the accelerator and placed it on the brake but did not *696 apply the brakes; that as he was coasting about 38 to 40 miles per hour at the time he passed the bus, and at that time he started applying the brakes attempting to stop the car.
According to appellant's testimony, the deceased child darted across the road to the middle of the road when he seemed to turn back but stopped and at that point had impact with the appellant's automobile."
* * * * * *
"It appears to us that these questions were properly submitted to the jury and constituted facts from which the jury could reach the conclusion that the appellant was negligent in the operation of his automobile in view of the fact that he had observed these children darting across the road ..."
See also Clark v. Lowe, 261 So.2d 567 (Fla. 4th DCA 1972); Mackey v. Arnold, 242 So.2d 754 (Fla. 4th DCA 1970); cf. McQueen v. Atlantic Truck Service, Inc., 215 So.2d 325 (Fla. 1st DCA 1968).[2]
In this court, the appellant has all but conceded that Leon was guilty of at least some contributory negligence.[3] Since the case is of course governed by the doctrine of comparative negligence, however, a concession or even a finding to that effect does not alter the conclusion that the case must be submitted to a jury. As the court observed in Petroleum Carrier Corp. v. Gates, 330 So.2d 751, 752 (Fla. 1st DCA 1976):
"Because of the very nature of the comparative negligence doctrine, situations in which directed verdicts will be appropriate will occur with even less frequency, particularly in cases where the plaintiff's own negligence is in issue. We do not here express an opinion as to whether a directed verdict should ever be granted where the negligence of both parties is at issue. We do, however, believe that such cases will be extremely rare."
See also: Wills v. Sears, Roebuck & Co., 351 So.2d 29 (Fla. 1977); St. Martin v. Allstate Ins. Co., 367 So.2d 1077 (Fla. 3d DCA 1979). This is most assuredly not one of those extremely rare cases.
Reversed and remanded.
NOTES
[1] The testimony is in conflict as to which of the three lanes the bus was occupying.
[2] The appellee cites such cases as Fernandez v. Kaba, 360 So.2d 34 (Fla. 3d DCA 1978), and Bell v. A.A. Holiday Rent-A-Car, Inc., 304 So.2d 535 (Fla. 3d DCA 1974). These decisions, which involve situations in which a jaywalking pedestrian so suddenly appears in front of a driver that he has no reasonable opportunity to avoid a collision, are plainly inapposite.
[3] But see Signaigo v. Hennings, supra.