698 So.2d 1248 (1997)
BOULTON AGENCY, INC., a Florida Corporation, the Travelers Indemnity Company, a foreign corporation, Appellants,
v.
PHOENIX WORLDWIDE INDUSTRIES, INC., a Florida corporation, Appellee.
Nos. 95-1377, 95-1232.
District Court of Appeal of Florida, Third District.
July 23, 1997.
Rehearing Denied October 1, 1997.
*1249 Hinshaw & Culbertson and Eric G. Belsky and Nicholas C. Berry, Ft. Lauderdale; Smith, Demahy, Drake, Cozad & Cabeza and Kenneth R. Drake, Miami, for appellants.
Robert J. Levine and Suzan Jon Jacobs, Miami, for appellee.
Before COPE and GREEN, JJ., and BARKDULL, Senior Judge.
PER CURIAM.
Defendants-appellants Travelers Indemnity Company and Boulton Agency appeal an amended final judgment after a jury verdict finding that Boulton failed to procure sufficient insurance to cover non-owned vehicles and other assets at Phoenix Worldwide Industries' manufacturing plant which were destroyed by Hurricane Andrew. Plaintiff-appellee Phoenix Worldwide Industries cross-appeals the trial court's refusal to determine as a matter of law that ambiguity in Travelers' garagekeeper's policy provided coverage limits of $120,000 per vehicle. We conclude that the trial court erred in directing a verdict on the issue of Boulton's agency relationship to Travelers and remand for a new trial on the question of agency and for recomputation of the vehicle damages; we affirm on the cross-appeal.
Boulton serves as an independent agent to several insurance companies, including Travelers. In July, 1991, Phoenix's prior insurance agent faxed a copy of Phoenix's April, 1991, insurance application to Ms. Pasantes at Boulton. Using that application, Boulton placed coverage on behalf of Phoenix with Travelers and Appalachian Insurance Company in August, 1991. The policies were renewed in May, 1992.
Phoenix alleged that 45 vehicles, 12 of which were equipped, at least partially, with costly surveillance equipment, were severely damaged and their contents completely destroyed during the hurricane. When Travelers appraised the vehicles, no surveillance equipment was seen. Phoenix claimed it spent $781,963.49 repairing the vehicles, $328,568.08 of which was for damages to the surveillance equipment. Unrebutted evidence indicated that $57,387.04 of the repair charges were duplicated.
Phoenix filed suit against Travelers for breach of contract and reformation, against Travelers and Boulton for negligence for failure to adequate insure Phoenix's non-owned vehicles (including their equipment), and for negligence for failure to adequately insure Phoenix's plant inventory, equipment and contents. Phoenix alleged that Mr. Esquivel requested limits of $120,000 per vehicle, rather than $120,000 per location, as the policy was interpreted by Travelers. Phoenix claimed that the total vehicle damages were $781,963.49, and the damages for inventory and personal property loss were either $1,932,255, the replacement cost, or $3,369,824, the selling price.
The court directed a verdict in favor of Phoenix, finding that Boulton was Travelers' agent and therefore Travelers would be vicariously liable for any damages allegedly caused by Boulton's negligence. As to the vehicle claim, the jury found: (1) the Travelers policy provided $120,000 in coverage per location; (2) Boulton was negligent and Phoenix was comparatively negligent, apportioned Boulton 65% and Phoenix 35% liable; and (3) Phoenix's damages for non-owned vehicles and their equipment was $1,006,625. As to the plant contents claim, the jury found: (1) Boulton and Phoenix were negligent, apportioned Boulton 48% and Phoenix 52% liable; and (2) Phoenix's damages for plant contents loss were $925,630.
At the hearing on post-trial motions, the trial court ordered the following: As to the vehicle claim, the damages were reduced to $781,963.49, then further reduced to $120,000 as the amount paid under the policy, and then reduced again to reflect Phoenix's 35% comparative negligence. As to the plant contents *1250 claim, the damages were reduced to $69,630 to reflect the $856,000 paid by Appalachian Indemnity Company, and then reduced again to reflect Phoenix's 52% comparative negligence. The trial court denied Boulton's motions for summary judgment, directed verdict, and judgment notwithstanding the verdict. The trial court denied Boulton and Travelers' motions for new trial and directed verdict.
Boulton and Travelers assert that the trial court erred in granting a directed verdict in favor of Phoenix, finding that Boulton was Travelers' agent, and that Travelers was therefore vicariously liable for any damages caused by Boulton's negligence.
When reviewing a final judgment on a directed verdict, the District Court of Appeal must view the evidence adduced and every conclusion inferable therefrom in a light most favorable to the non-moving party, resolving every conflict in favor of that party. See Elmowitz v. Gloria Zimmerman Revocable Trust, 610 So.2d 52, 53 (Fla. 3d DCA 1992); Reams v. Vaughn, 435 So.2d 879, 880 (Fla. 5th DCA 1983). A directed verdict "should not be entered if the evidence is conflicting and permits different, reasonable inferences." See Riccio v. Allstate Insurance Co., 357 So.2d 420, 422 (Fla. 3d DCA 1978); see also Clark v. Better Constr. Inc., 420 So.2d 929, 930 (Fla. 3d DCA 1982).
An "insurance broker" is one who acts as middleman between the insured and the insurer, and who solicits insurance from the public under no employment from any special company, and who, upon securing an order, places it with a company selected by the insured, or, in the absence of such a selection, with a company selected by himself; whereas an "insurance agent" is one who represents an insurer under an employment by it. Whether a person acts as a broker or agent is not determined by what he is called but is to be determined from what he does. In other words, his acts determine whether he is an agent or a broker.
3 Couch on Insurance 3d, section 45:1 (1960); see RLI Ins. Co. v. Collado, 678 So.2d 1313, 1315-16 (Fla. 2d DCA 1996), rev. granted, 691 So.2d 1079 (Fla.1997). The general rule is that an insurance broker is considered the agent of the insured rather than the insurer in matters connected with the procurement of insurance. See Auto-Owners Ins. Co. v. Yates, 368 So.2d 634, 634 (Fla. 2d DCA 1979); T & R Store Fixtures, Inc. v. Travelers Ins. Co., 621 So.2d 1388, 1389 (Fla. 3d DCA 1993). After carefully considering the record, briefs, and arguments of counsel, and viewing same in the light most favorable to Travelers, the non-moving party, we find that evidence was introduced on which the jury could have determined that Boulton was not Travelers' agent for the purpose of setting coverage limits.[1] Furthermore, "[t]he question of agency is one of fact to be determined by the trier of fact and the burden of proof is on the party who asserts it." Bernstein v. Dwork, 320 So.2d 472, 474 (Fla. 3d DCA 1975). The issue of whether Boulton was acting as the agent of Travelers such that Travelers could be held vicariously liable for Boulton's alleged negligence in procuring inadequate coverage limits, was a question for the jury. We conclude that the trial court improperly removed this issue from the jury's consideration, and therefore reverse and remand with instructions to grant a new trial on the agency issue only.
Boulton asserts that the trial court abused its discretion in denying a new trial on the vehicle damage claim, where the damages awarded were excessive. Phoenix's position was that its damages were $781,963.49. The jury awarded $1,006,625.43. The trial court properly reduced that figure to $781,963.49 to reflect the amount requested by Phoenix, but failed to consider the unrebutted evidence presented that at least $57,387.04 of the claimed $781,963.49 was duplicated. Therefore, the matter is returned to the trial court for recomputation of the vehicle damages award and for a new trial on the issue of Boulton's agency relationship to Travelers, and in all other respects the amended final judgment is affirmed.
*1251 Affirmed in part, reversed in part, with directions.
NOTES
[1] Boulton employees repeatedly testified that their primary interest was "to do the best job possible for the insured." Phoenix's own expert testified that Boulton was acting in a dual capacity, as an agent of both Phoenix and Travelers.